2008 ND 92

**Shawn M. WALBERG, Plaintiff**

v.

**Michael Duane WALBERG, Defendant and Appellee**

v.

**State of North Dakota, Intervenor and Appellant.**

**No. 20070259.**

Supreme Court of North Dakota.

May 15, 2008.

Mark A. Meyer (on brief), Meyer Law Firm, Wahpeton, N.D., for defendant and appellee.

John Douglas Waller (argued), Special Assistant Attorney General, Fargo, N.D., and James Conner Fleming (on brief), Special Assistant Attorney General, Bismarck, N.D., for intervenor and appellant.

MARING, Justice.

[¶ 1] The State of North Dakota, as an intervenor in a child support proceeding, appeals from a sixth amended judgment modifying child support obligations of Shawn and Michael Walberg and from an order denying the State's post-judgment motion. The State argues the amended judgment violates N.D.C.C. § 14–09–09.33 because the judgment allows an offset of Shawn Walberg's current or future child support obligation against Michael Walberg's child support arrearages. We hold our child support statutes authorized Shawn Walberg, with court approval, to consent to an agreement about past-due child support. We affirm.

I

[¶ 2] In June 2006, after Shawn Walberg pled guilty to criminal charges and was incarcerated, Michael Walberg moved for a change of custody of the parties' two minor children. In October 2006, with counsel and court approval, Shawn and Michael Walberg stipulated to a fifth

amended judgment that changed primary physical custody of the Walbergs' two minor children to Michael Walberg; eliminated his child support obligation, which had been accruing at $875 per month; established Shawn Walberg's child support obligation for the two minor children at $252 per month, effective June 1, 2006, based upon income imputed to her at a minimum wage; provided that Shawn Walberg's $252 per month child support obligation would be offset against Michael Walberg's total child support arrearage, which the district court said was $9,943.33 as of March 2, 2007; and limited Michael Walberg's obligation for arrearages to the offset.

[¶ 3] The State moved to intervene and sought to remove language in the fifth amended judgment that offset Shawn Walberg's future child support obligation against Michael Walberg's arrearages, claiming N.D.C.C. § 14–09–09.33 specifically limited any offset to past-due support. A judicial referee granted the State's motion to intervene, but denied the State's request to . eliminate the offset. The referee said eliminating the offset would be contrary to the best interests of the children because Shawn Walberg would have difficulty making her $252 per month future child support payments and collections against Michael Walberg's arrearages would have the practical effect of taking resources from the custodial parent. The referee said the offset was an alternative arrangement for assuring the regular payment of child support and denied the State's motion to remove the offset.

[¶ 4] The State sought district court review of the referee's decision. The court decided N.D.C.C. § 14–09–09.30(2)(b) authorized it to set Michael Walberg's obligation to pay his arrearages at an amount the court deemed proper because he was an obligor with primary custody of the

children, and the court set his obligation to pay his child support arrearages at $300 per month. The court rejected the State's request to remove the offset for future child support under N.D.C.C. § 14–09–09.33, concluding its decision did not mandate an offset of future support obligations but set Michael Walberg's obligation for arrearages under N.D.C.C. § 14–09–09.30(2)(b). The court then considered the method of payment under N.D.C.C. § 14–09–09.24(2) and decided there was good cause not to require immediate income withholding because immediate income withholding would not be in the children's best interests and the parties had previously reached an agreement for an alternative arrangement for the regular payment of child support. The court adopted an alternative pay plan that set Michael Walberg's child support obligation at $300 per month to be applied toward his arrearages and reduced his obligation by Shawn Walberg's $252 per month obligation for current child support. The court said that alternative arrangement resulted in Michael Walberg paying $48 per month to Shawn Walberg through the State Disbursement Unit and decreased his total arrearages by $300 per month until his arrearages were paid in full.

[¶ 5] The State moved for reconsideration, claiming the court did not address the prohibition on the use of other enforcement tools to collect Michael Walberg's existing arrearages. The court denied the State's motion.

II

[¶ 6] The State argues the district court erred as a matter of law in allowing an offset of Shawn Walberg's current or future support against Michael Walberg's past-due support under N.D.C.C. § 14–09–09.33, which provides that an "obligor's child support obligation for the current

month or for a future month may not be offset by past-due child support." The State argues the court erred in using the income withholding provisions in N.D.C.C. § 14–09–09.24 to offset current or future support because (1) N.D.C.C. § 14–09–09.33 is a specific statute that precludes offsets of current or future support and prevails over the general provisions of N.D.C.C. § 14–09–09.24; (2) N.D.C.C. § 14–09–09.33 is the more recently enacted statute; (3) N.D.C.C. § 14–09–09.24 addresses a narrow question of whether a child support obligation should be subject to immediate income withholding even if the obligor is not delinquent; and (4) nothing in N.D.C.C. § 14–09–09.24(5) authorizes an alternative arrangement that violates other statutes. The State asserts the court's finding of good cause not to require immediate withholding under N.D.C.C. § 14–09–09.24(4) is not controlling because any finding of good cause requires proof of timely payment of previously ordered support and the court made no finding here. The State contends N.D.C.C. § 14–09–09.24 does not authorize parents to enter into child support agreements that violate other statutes.

[¶ 7] Michael Walberg responds the court did not err or abuse its discretion in ordering an alternative arrangement for child support. He claims the result in this case is not less money going to the children; rather, the elimination of the offset would result in less money going to the children because of Shawn Walberg's incarceration and unemployment. Michael Walberg claims all of his arrearages are owed directly to Shawn Walberg and not to the State as reimbursement for past benefits provided by the State to her, and he argues "it appears that the State is engaging in an academic exercise to prove it is right," contrary to the best interests of the children.

[¶ 8] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A court errs as a matter of law when it fails to comply with child support requirements. *Id.* "When a district court *may* do something, it is generally a matter of discretion." *Id.* A district court abuses its discretion if it acts arbitrarily, capriciously, or unreasonably. *Id.*

[¶ 9] The issue in this case involves an analysis and interpretation of our statutory provisions for child support. Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865. Our primary objective in interpreting a statute is to determine legislative intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. §§ 1–02–07 and 1–02–38(2). If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We presume the legislature did not intend an unreasonable result or unjust consequences. N.D.C.C. § 1–02–

38(3). We construe statutes to give effect to all of their provisions, so no part of a statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada,* at ¶ 12. If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids to determine legislative intent. N.D.C.C. § 1–02–39.

[¶ 10] Section 14–09–09.33, N.D.C.C., authorizes child support offsets for past-due child support in limited circumstances and, at the time of the proceedings in the district court,[1] provided, in part:

1. Notwithstanding section 14–09–09.31, a court may order that a specific amount of past-due child support owed by an obligor to an obligee be offset by an equal amount of past-due child support owed to the obligor by the obligee. An order for an offset is permitted under this subsection only if:

   a. The proposed offset is limited to past-due child support and does not apply to child support owed in the current month or owed in any future month;

   b. The proposed offset does not include any past-due child support that has been assigned;

   c. Neither party whose past-due child support obligation will be reduced or eliminated by the proposed offset owes past-due child support to another obligee; and

   d. The opportunity to offset past-due child support under this section has not been used by either party as an incentive to avoid paying child support in the month in which it is due.

2. The order must include a specific finding that the proposed offset serves the best interests of the children to whom the obligor and obligee owe a duty of support.

3. Past-due child support owed by an obligor to an obligee may not be offset by past-due child support owed to the obligor by the obligee except as permitted in this section.

4. An obligor's child support obligation for the current month or for a future month may not be offset by past-due child support or other debts owed to the obligor by an obligee unless the court orders the offset as a method of satisfying an overpayment of child support that results from the establishment or reduction of a child support obligation.

[¶ 11] The State's argument tracks language of N.D.C.C. § 14–09–09.33, which, literally and by itself, provides some support for the State's position. However, our child support statutes and guidelines also require a district court to decide the level of child support required in each case. *See* N.D.C.C. §§ 14–09–09.7 and 14–09–09.30. As relevant to this case, N.D.C.C. § 14–09–09.30 deals with monthly child support obligations and provides:

1. If there is a current monthly support obligation, the total amount of child support due in each month is the sum of the obligor's current monthly support obligation; and

   a. The amount the obligor is ordered to pay toward any outstanding arrearage; or

   b. If no order to repay an arrearage exists, an amount for application to any arrearage equal to twenty

---

1. Section 14–09–09.33, N.D.C.C., was amended in 2007 to add a new subsection (3) and renumber the remaining subsections. *See* 2007 N.D. Sess. Laws ch. 148, ¶ 9.

percent of the obligor's current monthly support obligation; or

2. If there is no current monthly support obligation, the total amount of child support due in each month is:

    a. An amount equal to the greater of:

        (1) The amount the obligor is ordered to pay toward any outstanding arrearage; or

        (2) The sum of the obligor's most recent monthly support obligation and twenty percent of the obligor's most recent monthly support obligation;

    b. An amount the obligor is ordered to pay toward an arrearage during periods when the supported child resides with the obligor pursuant to a court order; or

    c. An amount the obligor is ordered to pay toward an arrearage if that amount is included in an order issued when there is no current monthly support obligation.

3. The total amount of child support due in each month under this section may be increased at the request of the obligor to repay an arrearage or by agreement with the child support agency.

[¶ 12] After the change in custody and elimination of Michael Walberg's "current monthly support obligation," he had "no current monthly support obligation" within the meaning of N.D.C.C. § 14–09–09.30(2), and the court had authority to order a monthly support obligation under N.D.C.C. § 14–09–09.30(2)(a),(b), or (c). The use of "or" in a statute is disjunctive and indicates an alternative between different things or actions. *State ex rel. Stenehjem v. FreeEats Com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828. Here, the district court ordered Michael Walberg to pay $300 per month toward his arrearages un-

der N.D.C.C. § 14–09–09.30(2)(b). The court also decided Shawn Walberg's current child support obligation was $252 per month based upon income imputed to her at a minimum wage.

[¶ 13] After deciding the parties' respective child support obligations, the court addressed the method of payment in the context of immediate income withholding under N.D.C.C. § 14–09–09.24, which provides:

1. Except as provided in subsection 2 or 3, each judgment or order which requires the payment of child support, issued or modified on or after January 1, 1990, subjects the income of the obligor to income withholding, regardless of whether the obligor's support payments are delinquent.

2. If a party to a proceeding, who would otherwise be subject to immediate income withholding under subsection 1, demonstrates, and the court finds that there is good cause not to require immediate withholding, or if the parties, including any assignee of support rights, reach a written agreement that provides for an alternative arrangement for assuring the regular payment of child support, the court need not subject the income of the obligor to immediate withholding.

3. If an obligor, who would otherwise be subject to immediate income withholding under subsection 1 in at least one case in which services are being provided by a child support agency under title IV–D, demonstrates, and a child support agency finds there is good cause not to require immediate income withholding, the child support agency may enter into a written agreement with an obligor that provides for an alter-

nate payment arrangement in lieu of immediate income withholding. Notwithstanding section 14–09–09.13, any failure to comply with an agreement under this subsection subjects the income of the obligor to income withholding under this section. Any obligee aggrieved by a finding of a child support agency under this subsection may seek review of the finding under subsection 2 of section 50–09–14.

4. A finding that there is good cause not to require immediate income withholding under subsection 2 or 3 must be based on at least:

   a. A written determination that, and an explanation of why, implementing immediate income withholding would not be in the best interests of the child;

   b. Proof of timely payment of previously ordered support, if any; and

   c. A requirement that the obligor keep the clerk and the child support agency informed of any employment-related health insurance to which the obligor has access.

5. A written agreement for an alternative arrangement for assuring the regular payment of child support is effective only if the agreement at least, in addition to other conditions the parties agree to:

   a. Provides that the obligor shall keep the clerk and the child support agency informed of any employment-related health insurance to which the obligor has access;

   b. Describes the provisions by which regular payment of child support is assured; and

   c. Is reviewed and approved by the court and entered into the court's records.

[¶ 14] The district court decided the exception to income withholding in N.D.C.C. § 14–09–09.24(2), which authorizes "an alternative arrangement for assuring the regular payment of child support," applied and there was good cause not to require immediate income withholding because it would not be in the best interests of the minor children in view of the unemployed status of Shawn Walberg and the parties' written agreement that provided for an alternative arrangement for assuring the regular payment of child support. Under N.D.C.C. § 14–09–09.24(5), a court must review and approve a written agreement for an alternative arrangement for assuring regular payment of child support, subject to the restrictions in that subsection. As relevant to the parties' agreement, the plain language of N.D.C.C. § 14–09–09.32 authorizes parental agreements and provides "[a]n agreement purporting to waive past-due child support is void and may not be enforced unless the child support obligee and any assignee of the obligee have consented to the agreement in writing and the agreement has been approved by a court of competent jurisdiction." Here, Michael and Shawn Walberg, with counsel and with court approval, agreed to the collection and payment options for their child support obligations. The State does not dispute that Michael Walberg's child support arrearages are owed directly to Shawn Walberg without any assignment to the State, and the State has not demonstrated that it is, or should be, in a better position than the mother regarding the parties' agreement.

[¶ 15] Moreover, during proceedings before the referee, Michael Walberg expressed concern about Shawn Walberg's ability to pay $252 per month for her current child support obligation. The State argued N.D.C.C. § 14–09–09.33 was clear that offset of current or future support was inappropriate and

If for some reason [Shawn Walberg] goes a couple of months without paying, the statute does authorize with some limitations or some-some thresholds to meet, offset of arrears. So, for instance, if she goes a couple of months without paying, there would be the opportunity to appear before the Court and then offset arrearages. However, offsetting current support is clearly violative of the statute.

Although N.D.C.C. § 14–09–09.33 generally prohibits an offset of current or future child support against past-due support, under the circumstances of this case where the current obligor is incarcerated and income is imputed to that obligor at a minimum wage, the State's argument would effectively implement an additional layer of proceedings to achieve the practical effect of the court-approved agreement by the parties in this case. The State's argument would require Michael Walberg to pay a sum of money for arrearages and, after some administrative delay for arrearages to accrue against Shawn Walberg, give part of that payment back to him. We decline to sanction an interpretation of our child support statutes that would require an unnecessary layer of bureaucracy at the expense of the children.

[¶ 16] We construe statutes to harmonize them and avoid unreasonable results and unjust consequences. When N.D.C.C. §§ 14–09–09.24, 14–09–09.30, 14–09–09.32, and 14–09–09.33 are construed together to harmonize those statutes and avoid the absurd and ludicrous result of taking resources from a custodial parent and the children under the circumstances of this case, we conclude those statutes authorize the court to approve a written agreement by the parties and any assignee of an obligee for payment for arrearages and alternative pay arrangements that encompass the result reached in this case. Under the circumstances of this case, we conclude the district court did not err in its interpretation and application of the child support statutes.

III

[¶ 17] We affirm the amended judgment and the order denying the State's post-judgment motion.

[¶ 18] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.